LEVI LONGFELLOW v. WILLIAM M. McGREGOR and Others.[1]

June 28, 1895.

Nos. 9411—(169).

Action on Bond—Measure of Damages.

> The measure of damages, as against the sureties, for a breach in the condition of a bond executed by a mortgagor to the mortgagee, to the effect that the former will rebuild a house destroyed by fire on the mortgaged premises, is the difference, at the time of the breach, between the value of the premises without the house built thereon, and the then amount of the mortgage debt, not exceeding the amount which the rebuilding of the house would have increased the value of such premises.

Assignment of Bond—Release of Sureties.

> Such mortgagee assigned the mortgage and debt secured thereby, but did not formally assign the bond to rebuild the house. *Held*, that the bond was a part of the security for the debt, and passed to the assignee with the debt, and, further, that such change in the ownership of the debt and security did not release the sureties on the bond. Longfellow v. McGregor, 56 Minn. 312, 57 N. W. 926, followed.

[1] Reported in 63 N. W. 1032.

**Evidence Considered.**

    Evidence considered, and *held* that it required the trial court to instruct the jury to return a verdict for the plaintiff for some amount, but that such court erred as to the measure of damages.

Appeal by one of defendants from an order of the district court for Hennepin county, Hicks, J., denying a motion for a new trial. Modified.

*Welch & Hayne, Victor J. Welch, E. S. Gaylord,* and *C. H. Howard,* for appellant.

*F. W. Reed,* for respondent.

START, C. J.[2]    The defendant William McGregor, on August 1, 1890, borrowed of the firm of Longfellow & Russell, which was composed of the plaintiff and Edward Russell, the sum of $2,200, and executed a note and mortgage on real estate to Russell to secure such loan, and, as further security, effected fire insurance on the house upon the mortgaged premises for $2,500, payable in case of loss to Russell, as mortgagee.

In the month of October, 1890, the house was destroyed by fire, and the loss was adjusted at $1,175.14, payable in 60 days, and a draft for the then present worth of this amount, payable to the order of Edward Russell and William McGregor, was made and delivered by the insurance company to Russell in full payment of the loss.    For the purpose of securing the payment of this insurance money to William McGregor, a bond was executed and delivered by William McGregor, as principal, and his co-defendants, as sureties, to Russell, who, in consideration thereof, delivered, properly indorsed, the draft to William McGregor, as the plaintiff claims, but, as the defendants claim, to George McGregor.    Afterwards, and on November 8, 1890, Russell duly assigned the note and mortgage to plaintiff, by an assignment absolute in its terms, but in fact the note and mortgage were then, and thereafter continued to be, the property of the firm of Longfellow & Russell, until Russell's death, on December 19, 1891.    The bond was in the penal sum of $2,000, and, as plaintiff claims, was upon the condition that William Mc-

[2] Buck and Canty, JJ., took no part.

Gregor should rebuild the house on the mortgaged premises within 90 days from the date of the bond.

The house was never rebuilt, and the plaintiff brought this action on the bond to recover damages for its breach. The case was in this court on a former appeal. See 56 Minn. 312, 57 N. W. 926. Upon the second trial in the district court the plaintiff had a verdict for the full amount of the penal sum of the bond, by direction of the court, and from an order denying his motion for a new trial the defendant Gaylord appeals.

1. The appellant claims that the bond, by reason of omissions in its condition, is a nullity, and further, conceding that it is valid, that the plaintiff cannot maintain this action on the bond because no one but Russell, the obligee in the bond, or his legal representatives, can maintain an action on it. The condition of the bond will be found in the opinion of this court on the former appeal. The court construed the bond in connection with the facts and circumstances under which it was executed and delivered, and held that it was valid, and that it was intended to secure the rebuilding of the house by William McGregor, in consideration of the insurance money being paid to him. The evidence on the trial now under review was sufficient, in connection with the bond, to show such agreement to rebuild, and renders the condition of the bond certain. The objection that the plaintiff cannot maintain an action on the bond because Russell was the obligee, and the plaintiff is not his representative, was also decided adversely to the appellant on the former appeal. The plaintiff is the assignee of Russell, and as such holds the legal title to the debt and mortgage, and may maintain an action in his own name to enforce payment of the debt, or any securities therefor, although he holds such title for himself, and also as trustee for others. Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113. Before such assignment, Russell held the legal title to the debt and the bond, and the fact that he held them in trust for the firm in no manner affected the liability of the sureties on the bond to him and his assigns. The bond was a part of the security for the payment of the mortgage debt, and passed to the plaintiff by the assignment to him. Such change in the ownership of the bond did not affect the contract

of the sureties, so as to release them.　Longfellow v. McGregor, 56 Minn. 312, 315, 57 N. W. 926.

2. The appellant further claims that the contract was not performed by Russell, in that the insurance money was never paid to William McGregor.　The undisputed evidence is that William McGregor signed a receipt for the insurance money, and indorsed the draft, and left it in the hands of Russell, with instructions that when the bond was brought in the draft was to be turned over to his brother, George McGregor, and it was so delivered to George McGregor by Russell, on receiving the bond.　This arrangement was not denied by William McGregor or his brother, although they did contradict the plaintiff's testimony on other matters. · This was, in legal effect, a payment of the insurance money to William McGregor, and there was no question for the jury on this point.　Another question made by appellant is that the full amount of the insurance money was not paid to William McGregor.　Such was not the case, for the loss was adjusted at $1,175.34, to be paid in 60 days, without interest, but by agreement of all of the parties, made before the bond was executed, a draft for the present worth of the amount due, or for $1,159.47, was accepted in payment of the loss.

3. After the commencement of this action, and on April 9, 1894, the plaintiff foreclosed his mortgage, and the premises were sold for $1,000.　The amount then due on the mortgage, for principal, interest, taxes paid, and expenses of foreclosure, was $3,040.34, which, less the amount for which the premises sold, leaves a deficiency of $2,040.34.　This balance being more than the penal sum of the bond, the trial court instructed the jury to return a verdict for the plaintiff for this amount.　This was error.　The damages must be assessed as of the date of the breach of the bond to rebuild the house, which was February 7, 1891.　The bond was to indemnify the mortgagee against any damages he might sustain, as such, by the failure of the obligee in the bond to rebuild the house on the mortgaged premises; hence his damages are not necessarily the enhanced value of the premises if the house had been rebuilt, for such value might materially exceed the amount of his mortgage debt.　The plaintiff's measure of damages in this case, as against the sureties, is the difference, at the time of the breach of the bond, between the value of the

v.61 m.—32

mortgaged premises without the house built upon them, and the then amount of the mortgage debt, not exceeding the amount which the rebuilding of the house would have increased the value of the premises; or, in other words, the measure of the damages is the depreciation in the value of his security by the failure to rebuild.

The evidence shows that the premises in question, without the house thereon, were of the value of $1,000 on February 7, 1891,— the date of the breach of the bond. This is the highest estimate of any witness. If we accept this as a basis for computing plaintiff's damages, it will be the view of the evidence most favorable to the appellant, and he cannot complain. The evidence also shows that the rebuilding of the house would have increased the value of the premises at least $3,000. Now, on February 7, 1891, there was due on plaintiff's mortgage $2,277. If we deduct from this amount the then value of the premises, we have the amount of the plaintiff's damages arising from the breach of the bond, viz. $1,277. He is equitably entitled to interest on this sum to date of the verdict, June 6, 1894, making in all the sum of $1,574.93, or $425.07 less than the amount of the verdict.

The trial court did not err in directing a verdict for the plaintiff, for the undisputed evidence shows that he was entitled to a verdict in some amount, but it did err in the amount of the verdict, for which error the order appealed from must be modified, and the case remanded to the district court of the county of Hennepin, with direction to modify such order so as to grant the motion for a new trial unless the plaintiff shall file with the clerk of such court, within 10 days next after notice of such modification, a stipulation that the verdict may be reduced to the sum of $1,574.93; but, if such stipulation shall be so filed, then such motion be denied, and judgment entered upon the verdict as so reduced.

So ordered.