MOHAWK COMPANY, Respondent, vs. BANKERS SURETY COMPANY, imp., Appellant.

*January 11—February 1, 1916.*

*Landlord and tenant: Breach of covenants: Remedies of lessor: Election: Foreclosure: Liens: Quieting title: Covenant to erect building: Conditions of surety bond: Measure of damages for breach.*

1. The right, under a stipulation in a lease, to declare a forfeiture thereof for breach of any of its covenants by the lessee, is one created for the benefit of the lessor, and he is not obliged to invoke it, but may elect whether to hold the lessee responsible in damages for the breach or to declare the lease at an end.

2. Where in a lease for ninety-nine years the lessees agreed to erect a building on the land, to be completed before a certain date, and gave a bond to secure performance of such agreement and to save the lessor harmless from all liens and claims for liens and all costs, charges, and damages (including costs of suits) for or on account of such liens or claims, such condition of the bond shows that it was contemplated that the lessor was to have time to clear the leased premises of such liens by action if necessary.

3. The lessees having defaulted in payment of the rent and also in the erection of the building, the lessor gave notice of the termination of the lease and commenced foreclosure proceedings

under sec. 2197a, Stats., but it appeared that improvements to the amount of $5,000, required in order to bring the case within that statute, had not been made. · *Held,* that a foreclosure judgment under the statute was improper, but such judgment was within the general jurisdiction of equity, valid between the parties, and sufficient as a decree to remove a cloud on the title as against the lessees and those claiming liens under or through them.

4. The surety on the bond given by the lessees, not having been made a party to the foreclosure suit and the defense thereof not having been tendered to it, was not concluded by the judgment; nor was it relieved thereby of anything.

5. The acts of the lessor in giving notice and prosecuting the foreclosure suit were equivalent to an election by him to terminate the lease and take possession one year after judgment therein quieting his title, unless the premises were sooner redeemed; and, the lessor having the right to clear the premises of liens at their expense, neither the lessees nor their surety could object to this.

6. For the lessees' default in failing to erect the building (which would have been security for the performance of all other covenants of the lease) the measure of damages recoverable is not the same as in case of building contracts generally. The lessees and the surety on their bond are liable for all damages logically flowing from such breach; and the fact that performance of the covenants to pay rent and taxes was not covered by the bond, cannot be taken to enlarge or diminish such damages.

7. The damages recoverable in such case include rents and taxes, not paid by the lessees, which accrued prior to the time when the lessor elected to and did resume possession of the premises free and clear of liens; but do not include rents or taxes accruing thereafter.

APPEAL from a judgment of the circuit court for Douglas county: CHESTER A. FOWLER, Judge. *Reversed.*

For the appellant there were briefs by *Abbott, MacPherran, Lewis & Gilbert,* and oral argument by *E. W. MacPherran.*

For the respondent there was a brief by *Hanitch & Hartley,* and oral argument by *C. J. Hartley* and *Louis Hanitch.*

TIMLIN, J. The plaintiff, owner of certain land, on October 1, 1909, executed a lease thereof for ninety-nine years

to Matthew and William Leithauser. The lessees agreed to forthwith proceed and erect according to described plans and specifications a building upon the demised premises and to complete the same on or before May 1, 1910. At the termination of the lease, all its covenants performed, the building was to be the property of the lessor. The performance of this covenant was required to be and was secured by bond in the sum of $30,000 with the appellant as surety thereon, and this action is on the bond. The condition of the bond was:

"Now, therefore, if the said principals shall erect and complete said theater building in full conformance with said plans and specifications not later than May 1, 1910, and save said obligee harmless from any and all liens and claims for liens for or on account of work, skill, or materials used in said constructions and from all costs, charges and damages (including costs of suits begun or completed, with a reasonable allowance for attorney's fees) for or on account of such liens or claims for liens, then this obligation shall be null and void, otherwise of full force and effect."

This bond was dated October 26, 1909, and immediately after its execution the lessees took possession of the demised premises and commenced the erection of the building provided for in the lease. They proceeded therewith as far as to construct a basement wall, when they ceased operations. After the execution of the lease and bond the lessees assigned their term to a corporation called the People's Theater Company. Only two quarterly instalments of rent were paid under the lease. The lease contained, in addition to the covenant to build, covenants to pay rent quarterly and to pay taxes and assessments and also other covenants. Sec. 2197a, Stats., in force when this lease was executed, provided that in case of a default in the conditions or breach of the covenants of any lease of land for a term exceeding fifty years which required the lessee to construct improvements or buildings on the land demised at his cost exceeding in value $5,000, and in case such improvements have been made, the lessor might

have a remedy by foreclosure. The latter, in such case, was denied the remedy of unlawful detainer provided by ch. 145, Stats. The lessee in such case is entitled to retain possession for one year and pay up the rent in arrears and that subsequently accruing, etc., and have the property. During this year the lessee is entitled to the rents, issues, and profits thereof. At the end of the year the lessor is entitled to a writ of assistance in case the lessee refuses to surrender possession. Notice of termination of lease was given, and foreclosure was begun under this statute by the plaintiff against the lessees and their assignees and carried to judgment, but the facts did not bring the lease in question within the terms of that statute because improvements to the amount of $5,000 had not been actually made on the demised premises.

This statute confers very valuable rights upon the lessee described in the statute and cuts the lessor off from a somewhat summary remedy common to all other lessors. Those entering into a lease after the enactment of this statute are supposed to do so with knowledge of the statute. The right to this foreclosure is given to the lessor in language permissive in form but perhaps mandatory where the lessee chooses to assert the valuable rights conferred on him by that statute. Whether improvements to the value of $5,000 or the improvements specified in the lease have actually been made is usually a question of fact.

In the instant case there was default in the payment of rent and there was also default in failing to construct the building required. For the damages flowing from the latter default the lessees and their surety, the appellant, are liable. The question is here upon the rule of damages. On the part of the appellant it is contended that the measure of damages should be the same or similar to that applied in cases of building contracts generally. This contention must be dismissed at once, for the relations of the parties are entirely different. There the owner agrees to pay a certain sum of money and

the contractor agrees to erect a described building. The advantage lost to the owner is really the difference in value between the sum which he agreed to pay and the building in place which the contractor agreed to erect, together with loss of use of the property for some time. Here the owner was to pay nothing and to have a building placed upon his premises which would be security for the performance of all other covenants in the lease on the part of the lessee. The owner has parted with the full consideration by executing and delivering the lease for the desired term upon the agreed rate. His position is more analogous to that of an owner who has paid the building contractor in advance. Neither is the fact that the lease contained a covenant to pay rent and another to pay taxes, which covenants were not mentioned in the bond, important. The presence of these covenants and the failure to require security for their performance cannot be taken to enlarge or diminish the legal damages logically flowing from the breach in question and hence within the contemplation of the parties. We may also lay out of sight a covenant on the part of the lessors that they would advance as a loan the sum of $20,000, to be secured by mortgage upon the $30,000 building to be erected when erected. There would even then be an equity of redemption of $10,000 available to the lessors as security. The right to declare a forfeiture of a lease is one created by stipulation in the lease for the benefit of the lessor and he is not obliged to invoke it. He has the choice whether to hold the lessee responsible in damages for breach of covenant or to declare the lease at an end for breach of condition. We do not think his delay to declare or enforce a forfeiture has any effect upon the measure of damages. The lessor's option above mentioned must have been known to the lessees and to their surety when the contract of suretyship was entered into. The condition of the bond is so written as to cover not only the legal damages flowing from the failure to erect and complete the theater

building within the time and on the terms specified, but also the failure to save the lessor harmless from liens and claims for liens imposed upon said premises or created by the lessees, including costs of suits begun or completed by the lessor for or on account of such liens or claims for liens.   This qualifies the contract.   It indicates that the parties hereto contemplated that the lessor was to have time to clear the leased premises of such liens by action if necessary.   The foreclosure judgment mentioned, while improper and unnecessary under the terms of the foreclosure statute mentioned, nevertheless was within the general jurisdiction of equity and valid as between the parties thereto, and sufficient as a decree to remove a cloud against the lessees and those claiming liens for labor or material under or through said lessees.   The appellant was not a party to that suit and the defense of the suit was not tendered to it.   It is therefore not concluded thereby.   But it was not relieved thereby of anything.   We think the facts amply show that a suit in equity by the lessor to remove a cloud was necessary.   The acts of the lessor in giving notice and commencing and prosecuting under the statute aforesaid, which would have governed the case had the improvements stipulated in the lease been made, are equivalent to an election by the landlord that he would terminate the lease and take possession one year after judgment quieting his title unless sooner redeemed.   Neither the lessees nor their surety is in a position to object to this.   The foundation constructed by the lessees was found on sufficient evidence to add no value to the reversionary interest of the lessor. While the damages allowed by the learned circuit court did not rest on these exact principles a large part of the amount was within the rule of compensation and within the amount which the plaintiff would be entitled to recover in any event. The cases of *Longfellow v. McGregor,* 61 Minn. 494, 63 N. W. 1032; *Johnson v. Cook,* 24 Wash. 474, 64 Pac. 729; *Rock v. Monarch B. Co.* 87 Ohio St. 244, 100 N. E. 887;

*O'Brien v. Ill. S. Co.* 203 Fed. 436, 121 C. C. A. 546; *U. S. v. U. S. F. & G. Co.* 236 U. S. 512, 35 Sup. Ct. 298; *Sharon v. American F. Co.* 172 Mo. App. 309, 157 S. W. 972, while not exactly in point, contain features somewhat analogous.

The learned circuit court itemized the damages allowed as follows:

| | |
|---|---|
| Taxes accruing after the surety contract which should have been paid by the lessees and were necessarily paid by the lessor ........................................................ | $981 08 |
| Rent unpaid and in arrears up to January 21, 1912, 1 year, 8 months, 19 days........................................ | 1,925 00 |
| Costs and reasonable expenses for attorney fees paid by the plaintiff in the suit mentioned............................ | 257 15 |
| Rentals from January 21, 1912, until plaintiff leased the property to a third person July 1, 1913................. | 1,395 00 |
| Taxes and special assessments accruing after January 21, 1912, necessarily paid by plaintiff..................... | 874 42 |
| Total ....................................... | $5,432 65 |

This with interest to January 1, 1915, resulted in a judgment for $6,070. The plaintiff lost its security for the covenants of the lease. Compensation, which is the guiding rule in damages, would require this loss to be made good. The damages had all accrued on May 1, 1910, when the lessees failed in their contract to erect the building. But security for covenants to be performed or moneys to become due looks to the future. When the plaintiff on January 21, 1912, elected to resume possession and did resume possession of the demised premises free and clear of liens, it accepted this possession of the demised premises in cancellation of all obligations to become due thereafter on the lease. It elected for such subsequently accruing damages this remedy instead of the remedy for breach of covenant. It did not do so by mere threats to take possession or declaration that the lease was at an end, because it had the right to clear off liens at appellant's expense; but it did by such notice and full possession taken free and clear of all liens in pursuance of such notice and the decree quieting title. We therefore think that the recovery should be reduced by the items of $1,395 for rents accruing

after January 21, 1912, when plaintiff took possession, and $874.42 for taxes and special assessments also accruing after that date. The cause should be remanded to the circuit court with directions to reduce the amount by these two items, make a new computation of the interest on the remaining amount from January 21, 1912, to the date of decree, and render judgment in favor of the plaintiff and against the appellant in the last mentioned amount. The appellant to recover costs in this court.

*By the Court.*—It is so ordered.