12280

SIMON v. KIRKPATRICK

(139 S. E., 614)

1. LANDLORD AND TENANT—RELATION OF LANDLORD AND TENANT CANNOT EXIST UNTIL LESSEE HAS GONE INTO POSSESSION.—Where lessee of premises under written lease does not go into possession, the relation of landlord and the tenant does not arise, but only that of landlord and lessee.

---

NOTE: On creation and existence of relation of landlord and tenant generally, see 16 R. C. L., 541; 3 R. C. L. Supp., 584; 6 R. C. L. Supp., 964.

As to right of landlord to retain rent paid in advance in event of termination of lease, see annotation in 50 L. R. A. (N. S.), 1034; 16 R. C. L., 931; 3 R. C. L. Supp., 610.

2. Landlord and Tenant—Where Lessee did not go into Posses-
sion, There Could be no Eviction or Repossession.—Where lessee
under written lease did not go into possession, there could be no
eviction of tenant or repossession by landlord inasmuch as relation
of landlord and tenant did not arise.

3. Landlord and Tenant—Lessee Refusing to go into Possession
or Perform Contract is Liable for Full Amount of Damages,
Present and Prospective.—Where one who has contracted in writ-
ing to rent premises refuses to take possession, a cause of action
immediately arises in favor of the lessor against the lessee for the
full amount of damages, present and prospective, which are the
necessary and direct result of the violation of the contract.

4. Landlord and Tenant—Measure of Damages From Lessee's
Breach of Contract is Difference Between Rent Reserved and
Rental Value of Premises for Entire Term with Special Dam-
ages Pleaded and Proved.—The measure of damages for lessee's
refusal to perform contract is the difference between the rent fixed
in the lease and the rental value of the premises for the entire term,
together with such special damages as plaintiff may plead and prove
to have resulted from the breach.

5. Landlord and Tenant—Lessee Refusing to Take Possession is
Liable for Agreed Rent, and While Lessor May Terminate Lease
and Release Lessee, he is not Bound to do so.—A lessee may be
bound by his express covenant or agreement to pay rent, though he
does not enter into possession of the demised premises, and, while
lessor may terminate the lease and release lessee from liability, he
is not bound to do so, but may let premises lie idle and hold lessee
to covenant to pay rent.

6. Landlord and Tenant—Lease May be Terminated by Eviction
and Re-entry, Expiration of Term, Breach of Covanants, Sur-
render, Merger of Term in Fee, Insolvency, or Nonpayment of
Rent.—A lease, an estate for years, may be terminated by eviction
and re-entry, expiration of the term, surrender with consent of
lessee, or by merger of the term in the fee, or by breach by lessee
of certain covenants, or by lessee's insolvency or nonpayment of
rent, and by other means.

7. Landlord and Tenant—Lessor Declaring Lessee's Rights Ended
on Failure to Take Possession and Pay Rent Held Entitled to
Recover Rent Only to Date of Such Notice.—Where lessor,
after lessee's failure to take possession and refusal to perform con-
tract, notified him that certain amount of rent was due, and that,
in view of failure to pay rent, he was "precluded from any further
right of benefit" under the lease, *held,* lessor was entitled to recover
rent due at time of such notice, but not rent thereafter accruing.

Before MANN, J., Greenville, November, 1925.  Affirmed.

Action by H. H. Simon against J. W. Kirkpatrick.  From an order requiring plaintiff to reduce the amount of his judgment, he appeals.

*Messrs. Bowen & Bryson,* for plaintiff, cite: *Measure of damages for breach of contract on part of lessee:* 16 R. C. L., 969, 972, 973; 24 Cyc., 923; Ann. Cas., 1912-C., 1050; 16 S. C., 635; 113 Pac., 630. *Evictment:* 34 S. E., 595; 11 A. & E. Enc. L. (2nd Ed.), 460; 36 C. J., 312; Id., 307; 35 C. J., 1193. *Cases distinguished:* 2 S. C., 255.

*Messrs. Mauldin & Love,* for defendant, cite: *Order of new trial not error:* 113 Pac., 630.

September 29, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appeal in this case is by the plaintiff from an order of new trial *nisi,* granted by the trial Judge, Hon. M. M. Mann.

The complaint, brought in November, 1924, alleged these material facts: That plaintiff, Simon, and defendant, Kirkpatrick, on June 21, 1924, entered into a lease as to certain real estate in the city of Greenville, owned by plaintiff, for 3 years, from July 1, 1924; that defendant agreed to pay as rent for the premises $150 per month for the first year, and $175 thereafter, payable on the first day of each month; that on July 1, 1924, plaintiff tendered the premises to the defendant, and plaintiff performed all the conditions of the lease on his part; that defendant did not pay any rent, though demand therefor had been made, and by reason of defendant's breach of the contract he was indebted to plaintiff in the sum of $6,000.

There is a contrariety of opinion as to the nature of the plaintiff's alleged cause of action; his counsel are indefinite in their characterization of it as an action "on a certain

lease"; counsel for the defendant assert that it is an action "for stipulated rental for the full period of lease, 3 years"; his Honor, the Circuit Judge, in his charge to the jury, characterized it as an action "for the alleged breach of a written contract"; in his order granted a new trial *nisi,* as an action "for the full 3 years' rent, based upon the premise that the contract assessed a liquidated damage by way of rental value." We think a proper construction of the complaint shows that it sets forth an action of breach of contract.

The undisputed facts are as follows:

On June 21, 1924, the plaintiff, Simon, and the defendant, Kirkpatrick, entered into a written contract, whereby Simon leased to Kirkpatrick a certain vacant lot in the city of Greenville, for a term of 3 years, beginning July 1, 1924, and ending June 30, 1927, at a stipulated rental of $150 per month for the first year, and $175 per month for the second and third years. The lease contained the following provision:

"It is agreed that if there is default in the payment of the rent above stipulated for as much as 60 days after same is due, that said H. H. Simon, his attorney, or agent, shall have the right to re-enter and repossess said premises, at his option and to expel and remove therefrom the said J. W. Kirkpatrick or any other person occupying the same."

The defendant contended that he was acting as agent for another, who expected to build upon the lot, but owing to a failure of the principal's plans, neither the defendant nor his alleged principal ever went into the actual possession of the lot, although the plaintiff made the necessary preparation for the defendant's possession, and so notified him. The defendant failed to pay the rent as agreed, and on September 30, 1924, the plaintiff served upon him the following notice:

"You are due me two (2) months' rent at one hundred and fifty dollars ($150) each as of September 1, 1924, you having failed to make payment as per terms of lease, are

thereby precluded from any further right or benefit thereunder."

The evidence tended to show that the plaintiff thereafter did all that could be reasonably required of him to rent or sell the property, but without success, having taken possession of it and turned it over to real estate agents for that purpose.

In November, 1924, the plaintiff instituted the present action. While it was pending, in August, 1925, 13 months after the lease went into effect (July 1, 1924), the plaintiff sold the property, and in November, 1925, the present action came on for trial before his Honor, Judge Mann, and a jury.

His Honor instructed the jury that if the plaintiff, upon certain contingencies stated, was entitled to recover at all, he was entitled to recover damages based upon the rental for the period of 13 months, from the beginning of the lease, July 1, 1924, to the date of the sale of the lot by the plaintiff. August 1, 1925, at the stipulated rates, $150 per month for the first year, and $175 per month for the second and third (this would amount to $1,800 for the first 12 months, and $175 for the thirteenth month, a total of $1,975) ; overruling the defendant's contention that the plaintiff, in any event, was limited in his recovery to the period between the beginning of the lease, July 1, 1924, and its termination by the plaintiff's notice of September 30, 1924, 3 months, at $150 per month, $450. The jury returned a verdict of $1,925 in favor of the plaintiff, evidently based upon the rental for 13 months, but containing an error of $50.

Thereafter upon the defendant's motion for a new trial, his Honor, Judge Mann, passed an order declaring:

"After a careful study of the authorities cited by counsel in support of the motion now before me, I am convinced that my impressions of the law on the trial were erroneous."

He then says:

"Had Simon notified Kirkpatrick that he was holding or taking possession of the premises for the account of Kirkpatrick, it is my opinion that he would clearly have been entitled to the amount of the verdict, as, I think, the facts warranted it. The relationship of landlord and tenant would not then have been terminated and any loss resulting to Simon by reason of Kirkpatrick's breach of the contract within the 13 months could properly have been charged up to Kirkpatrick as a defaulting tenant.

"But Simon elects to rely upon the authority given in the lease and *evicts Kirkpatrick* and precludes him 'from any further right or benefit thereunder.' *The only reasonable deduction is that this act terminated the relationship of landlord and tenant between them.* And is (in?) such a circumstance, the authorities available seem clear that the rent, or liability on the contract ceases."

Judge Mann ordered a new trial of the cause unless the plaintiff consented to reduce his verdict from $1,925 to $450, the last named amount being rent from July 1, 1924, to September 30, 1924, 3 months, at $150 per month.

The appeal here is from that order.

His Honor inadvertently fell into two errors in his statements in the order he made. He refers to the relationship between Simon and Kirkpatrick as being that of "landlord and tenant"; *as a matter of fact,* Kirkpatrick, the lessee, never went into possession of the premises, and notified Simon that he did not intend to do so; *as a matter of law,* therefore, the relation of *landlord and tenant* was never consummated. The relation was that of *lessor and lessee,* under a written contract of lease.

"In the case of a lease for a term of years even though the term is to commence immediately, the lessee is not regarded as a tenant until he enters upon the land, that is, until he takes possession, and until he does so he has been said to have merely an *'interesse termini,'* an expression also applied

to the interest of one to whom a lease is made of a term to commence *in futuro*." 1 Tiffany on Real Property, 114.

"No lease for years is complete until the tenant has entered upon the premises. His interest prior to such entry is termed an *'interesse termini,'* or right to possession." 18 A. & E. Enc. of Law, 164.

"The relation of landlord and tenant is created by contract, either express or implied, by the terms of which one person designated 'tenant' enters into possession of the land under another person known as 'landlord.' * * * Also, as has been said, 'a tenant is one who occupies the premises of another in subordination to the other's title and with his assent, express or implied.' " 16 R. C. L., 530.

"The relation of landlord and tenant is not proved by the mere production of a lease in evidence, but the entry of the lessee under the lease, or a holding by him referable to the lease, must also be proved." Syllabus, *Caldwell v. Center,* 30 Cal., 539; 89 Am. Dec., 131.

"A lessee has no estate in the land before entering into possession, and therefore, in an action to recover possession of the lessor, he must allege an entry under the lease." Syllabus, *Willcox v. Bostick,* 57 S. C., 151; 35 S. E., 496.

His Honor also refers to the *eviction* of the *tenant,* Kirkpatrick, by the notice of September 30, 1924, and to the *repossession* of the property by the *landlord,* Simon. For the same reason that Kirkpatrick had never taken possession, there could not have been an *eviction;* and if no eviction, the lessor never lost possession, and could not therefore have *repossessed* it.

"In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises." 1 Tiffany, 200.

"One cannot be evicted from premises of which he has never had possession, either actual or constructive." *Stiger v. Monroe,* 109 Ga., 457; 34 S. E., 595.

"It would seem to be the rule that there can be no eviction without an antecedent possession by the tenant, and therefore a failure or refusal of the landlord to deliver possession of all or part of the premises leased, while a wrong for which the tenant has his remedy at law, does not amount to a technical eviction." 11 A. & E. Enc. of Law, 460.

"One cannot be evicted from premises of which he has never had possesion, either actual or constructive, since there can be no technical eviction from premises without an antecedent possession by the tenant." 24 Cyc., 1130.

We think that the gist of his Honor's ruling, however, is contained in the portion of his order above italicized:

"The only reasonable deduction is *that this act terminated the relationship* of landlord and tenant *between them.*"

He had reference to the notice of September 30, 1924:

"You are due me two (2) months' rent at one hundred and fifty dollars ($150) each as of September 1, 1924, you having failed to make payment as per terms of lease, are thereby precluded from any further right or benefit thereunder."

The fact that he may have erroneously characterized the relation as that of "landlord and tenant" cannot possibly affect the correctness of the legal conclusion, if it be a correct conclusion, that the act referred to terminated the relation between the parties, by whatsoever name it may be called.

And equally so in reference to his Honor's error in the particulars of the eviction and repossession by the plaintiff. The existence or nonexistence of these matters has absolutely nothing to do with the main issue, whether the notice terminated the relation of the parties.

Upon that issue we do not see that a doubt could arise. When Kirkpatrick refused to take possession of the lot, which he was under an obligation to do by the terms of the lease, he breached the contract and at once became liable to the plaintiff for damages resulting from that breach.

Where one who has contracted in writing to rent premises is tendered such premises at the proper time, refuses to take the same, and declines to perform his contract, a cause of action immediately arises in favor of the lessor against the lessee, the prospective tenant, for the full amount of damages, present and prospective, which were the necessary and direct result of the violation of the contract. *Cleveland v. Bryant,* 16 S. C., 634. *James v. Kibler,* 94 Va., 165; 26 S. E., 417; 35 C. J., 1193.

And it is equally true, in an action for such breach of contract:

"The measure of damages is the difference between the rent fixed in the lease and the rental value of the premises for the entire term, at the time of the breach, together with such special damages as plaintiff may plead and prove to have resulted from the breach." 35 C. J., 1195.

This remedy was as clearly open to the plaintiff as anything could possibly be. Or he might have awaited the expiration of the term, and, upon a showing of reasonable efforts to minimize his damage, sued for the damage actually sustained, the agreed rental less rental which he had in the meantime received or with proper effort should have received. He was not obliged to adopt either one of these remedies, for the contract itself provided another:

"It is agreed that if there is default in the payment of the rent above stipulated for as much as 60 days after same is due, the said H. H. Simon, his attorney, or agent, shall have the right to re-enter and repossess said premises, at his option and to expel and remove therefrom the said J. W. Kirkpatrick or any other person occupying the same."

The record shows that he adopted the remedy thus provided, for on September 30, 1924, he served the defendant with the notice hereinbefore set out, that on account of the defendant's failure to pay two months' rent, "as per terms of the lease (you) are thereby precluded from any further right

or benefit thereunder," and proceeded to place the lot with a real estate firm for sale or rent.

It does not appear that up to the time the notice was served upon Kirkpatrick, the plaintiff exercised any right of possession in the property. He evidently considered Kirkpatrick as at least entitled to the possession until he had made default in the payment of rent for two months. At the end of that time he did all that he could do to terminate Kirkpatrick's rights under the lease. He could not evict him, for Kirkpatrick was not in possession and never had been. He could not make a re-entry for the same reason. If Kirkpatrick had gone into possession, certainly the notice would have been sufficient to terminate the lease. Not having done so, the plaintiff attempted to and did preclude him "from any further right or benefit thereunder." It appears illogical to preclude him from all right and benefit under the lease, and at the same time attempt to hold him for future obligations under it.

"The tenant may be bound by his express covenant or agreement to pay rent, although he does not enter into possession of the demised premises, and *while the landlord may terminate the tenancy and release the tenant of liability,* he is not bound to do so, and may let the premises lie idle and hold the tenant on his covenant to pay the rent." 36 C. J., 307. (Evidently the author has fallen into the same error of nomenclature that his Honor fell into; treating a *lessee* who had gone into possession as a *tenant;* not an unnatural mistake.)

Eviction and re-entry by the lessor are not the only methods of terminating a lease—an estate for years.

It may be determined by the expiration of the term, by the surrender of the term by the lessee with the consent of the lessor, by a merger of the term in the fee, or upon the breach by the lessee of certain covenants or stipulations in the lease, as upon the death of a certain person, or the lessee's insolvency, or the nonpayment of rent, and many

other causes; in any of which last-named events the lessor has the right upon notice to terminate the lease. See 1 Tiffany R. P., § 52.

By the provision in the lease above quoted, the lessor reserved the right, upon default of two months' rent, "to re-enter and repossess said premises *at his option,* and to expel and remove therefrom the said J. W. Kirkpatrick or any person occupying the same"; and in the exercise of that option, as specifically stated in the notice, he served notice upon Kirkpatrick that he was from that time "precluded from any further right or benefit thereunder," that is, under the lease.

If that did not evidence the purpose and intent of Simon to terminate the lease, it seems impossible for him to have employed means or language to accomplish his purpose and intent.

Now, then, the important issue arises, what rights did Simon have upon the termination of the lease *by him?* It does not make any difference by which of the methods of termination referred to the result may have been accomplished, the rule is the same; the estate is at an end; the lessee is liable for the stipulated rent, as damages, up to the date of the termination; after that, his obligation, as well as his rights under the lease, have been annihilated.

It must be assumed that Simon exercised his option to terminate the lease as his personal interest dictated. If he restored his own right to the use and occupancy of the lot, free from the incumbrance of the lease and his obligation to Kirkpatrick, he necessarily withdrew from Kirkpatrick the consideration upon which his promise to pay rent was based. If Simon thereafter had the undisturbed control of the lot, to place it in the hands of a real estate man to sell or rent, which he did, certainly, Kirkpatrick could not have had the same right at the same time, and if Kirkpatrick had endeavored to protect himself against the liability sought to be imposed by the plaintiff, he would have been powerless

to do so. Is it fair, then, to Kirkpatrick, to hold him to a liability against which he could not have protected himself, and the consideration of which he had been withdrawn by Simon who was enjoying it for his own benefit?

The rule, as we understand it, is that the termination of a lease does not absolve the lessee from obligations incurred up to the date of termination, but it does absolve him from future obligations, unless the lease shall provide that, notwithstanding the termination for cause by the lessor, the lessee shall not be relieved of such future obligations. 36 C. J., 335. The lease in the case at bar does not carry a provision to the effect mentioned.

In *Gardiner v. Butler,* 245 U. S., 603; 38 S. Ct., 214; 62 L. Ed., 505, it is said:

"Massachusetts has followed the English tradition, and we believe that it is the general understanding in that state, that in the absence of statute or express contract a lessor *who has terminated a lease and evicted the tenant has no further claim against the lessee."*

We can perceive no difference between a case of termination of a lease followed by eviction of the tenant, where that is possible by reason of his possession, and that of the termination of a lease by the lessor, not followed by an eviction which is impossible by reason of the fact that the lessee has never been in possession. In either case, the lessor will have done all that he could do to terminate the lease. If a demand to *get out* is a termination when the lessee is in possession, a demand to *stay out* would be equally effective when he is not in possession.

"Upon the termination of a lease for conditions broken, the lessor is entitled to rent which had previously become due, but not, in the absence of an express agreement, entitled to recover rent subsequently to become due." *Galbraith v. Wood,* 124 Minn., 210; 144 N. W., 945; 50 L. R. A. (N. S.), 1034, Ann. Cas., 1915-B, 609.

. "The termination of a lease during its term by surrender, by re-entry, or by eviction, without more, discharges the lessee from liability for rents that have not accrued, but leaves him liable for all the rents which have accrued and become due, and for the performance of all covenants whose fulfillment is due." *American B. Co. v. Pueblo Co.* (C. C. A.), 150 F., 17; 9 L. R. A. (N. S.), 557; 10 Ann. Cas., 357.

"A forfeiture and re-entry by the lessor under a lease between rental periods releases the lessee from liability for all rents not fully accrued." *Youngs Co. v. Courtney* (C. C. A.), 219 F., 868.

In *Watson v. Merrill* (C. C. A.), 136 F., 359; 69 L. R. A., 719, the syllabus is:

"The retaking of the premises by the lessor releases the lessee from payment of all subsequently accruing rents unless the contract expressly provides otherwise."

The opinion declares:

"If the rent for any month was not paid, or if waste was permitted, the lessor had the option to repossess himself of the premises, and to withhold from thenceforth the consideration for future installments of rent, or to permit the lessee to continue in possession of the property, and to enforce the collection of the rents by an action or by some other proceeding. He could not, however, do both. His resumption of the premises necessarily constituted, in the absence of an express agreement to the contrary, a termination of the lease, and a release of the lessee from the payment of all the installments of rent he had promised to pay thereafter."

"The retaking of the premises by the lessor releases the lessee from subsequently accruing rents, unless the lease expressly provides otherwise." *Burke v. Norton,* 42 Cal. App., 705; 184 P., 45; 1 Taylor, Land. & T. (8th Ed.), §§ 377, 378; 2 Wood, Land. & T. (2d Ed.), § 477.

"Where a lessor re-enters and declares a forfeiture for the lessee's failure to pay rent, rent then fully accrued is collectible, but rent which has not fully accrued is not recover-

able." *Sharon v. American Co.,* 172 Mo. App., 309; 157 S. W., 972.

"Where a landlord re-enters for the tenant's breach of the lease, the lease is at an end, and the tenant's covenant to pay rent is terminated." *Cohen v. Carpenter,* 128 App. Div., 862; 113 N. Y. S., 168. *Ayen v. Schmidt,* 80 Misc. Rep., 670; 141 N. Y. S., 938.

"The election of the lessor to terminate the lease for nonpayment of rent, and the ejection of lessee in an action, terminated the tenancy, so as to release lessee from liability for rent not due when he was ousted." *Yuen Suey v. Fleshman,* 65 Or., 606; 133 P., 803; Ann. Cas., 1915-A, 1072.

"Where there is a forfeiture of a lease, and lessor takes possession of the premises, he cannot thereafter recover for rents." *Fell v. Dentzel,* 2 Marv. (Del.), 137; 42 A., 439.

In *Sutton v. Goodman,* 194 Mass., 389; 80 N. E., 608, the Court said:

"The lease became terminated when the defendant (lessor) exercised his option to declare it null and void. * * * Having terminated the lease and evicted the lessee, the defendant, under the terms of this lease, had no further claim against the lessee."

"Resumption of possession by the lessor of the thing leased operates as a surrender of the lease and puts an end to the lessee's liability for future installments of rent, unless otherwise plainly provided." *Lamson Co. v. Bowland* (C. C. A.), 114 F., 639.

"If a lease stipulates that for any breach of covenant the lease shall determine and be utterly void at the election of the lessor, an entry by the landlord is an exercise of his option to determine the lease, and he cannot recover for subsequent rent." *Grommes v. St. Paul Co.,* 147 Ill., 634; 35 N. E., 820; 37 Am. St. Rep., 248.

In *Sharon v. American Co.,* 172 Mo. App., 309; 157 S. W., 972, the Court said:

"The law seems to be clear that if a lessor enters the premises and declares a forfeiture for a failure of the lessee to pay rent, all rent then fully accrued is collectible by the lessor, but the rent which has not fully accrued at the time of entry and forfeiture on action cannot be maintained."

In *Curtiss v. Miller*, 17 Barb. (N. Y.), 477:

"It is well settled by numerous adjudged cases, that when the term is surrendered before the expiration of a period for which rent accrues, the rent for the whole of such period, not then due, is extinguished, and can neither be distrained for nor collected by action."

In *Yuen Suey v. Fleshman*, 65 Or., 606; 133 P., 803; Ann. Cas., 1915-A, 1072:

"In this case, the appellant elected to terminate the lease for nonpayment of rent, and ejected the respondent by an action at law. This effectually terminated the tenancy, and exonerated the lessee from all liability for rent not due at the time of such ouster."

See, also, *Johnson v. Watkins*, 26 Ga. App., 759; 107 S. E., 341.

While as indicated, we do not agree with all the holdings of the trial Judge upon which he based his order, we are of the opinion that the conclusion reached by him was correct, and therefore the order appealed from is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.